IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

WILLIAM L. MEANS,                          )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )        Case No. CIV-06-1137-HE
                                           )
ROBERT LAMPERT, *et al.*,                  )
                                           )
            Defendants.                    )

## Report and Recommendation

Incarcerated in a private prison, William Means has sued for violation of the right to

practice his Native-American faith with a number of religious articles.  The prison

administration has allowed him to keep some of the items, but has disallowed possession of

many others.  In the complaint, Mr. Means invoked the first amendment and sought relief

under 42 U.S.C. § 1983.  In his response to the summary judgment motion, the Plaintiff

added that confiscation of his religious articles had resulted in a violation of the Religious

Land Use and Institutionalized Persons Act ("RLUIPA").

The Court should grant summary judgment to Defendants Figueroa, Crouse, and

Wright[1] on the first amendment claim.  But the Court should construe the complaint to

include a claim under RLUIPA, and Defendants Figueroa, Crouse, and Wright have not

---

[1]      Corrections Corporation of America and John Ferguson also requested summary judgment even though the Court had already granted their motion to dismiss.  For these defendants, the summary judgment motion is moot in light of the ruling on the motion to dismiss.

addressed a claim under this statute.   Thus, the statutory claim should remain after disposition of the summary judgment motion.[2]

### Construction of the Complaint:  Assertion of a Claim Under RLUIPA

The remaining defendants contend that the Plaintiff has not properly pled a claim under RLUIPA and that they are entitled to summary judgment on the constitutional claim. In response, the Plaintiff argues that prison administrators have failed to employ the least restrictive means to accomplish their penological objectives.   Under the first amendment, administrators need not employ the least restrictive means.[3]   But they must do so under RLUIPA.[4]   As a result, the threshold issue is whether the Court should construe the complaint to include a claim under RLUIPA.   The Court should answer in the affirmative.

In this circuit, the plaintiff generally has no duty to specify a legal theory in the complaint.   For example, the Tenth Circuit Court of Appeals has stated:   "The dimensions of a suit are not determined by the pleadings, and it is not necessary to allege the particular law or theory under which recovery is sought."[5]   A limited exception exists, providing that

---

[2]   RLUIPA applies only if the government imposes a substantial burden on worship in a program that receives federal financial assistance or that affects commerce with foreign nations, states, or Indian tribes.   RLUIPA, 42 U.S.C. § 2000cc-1(b).   The Defendants have not addressed whether the private prison received federal financial assistance or affects commerce with foreign nations, states, or Indian tribes.

[3]   *See Overton v. Bazzetta*, 539 U.S. 126, 136 (2003) ("*Turner* does not impose a least-restrictive-alternative test" (citation omitted)); *Turner v. Safley*, 482 U.S. 78, 90-91 (1987) (disavowing "a 'least restrictive alternative' test").

[4]   RLUIPA, 42 U.S.C. § 2000cc-1(a)(2).

[5]   *Misco Leasing, Inc. v. Keller*, 490 F.2d 545, 548 (10th Cir. 1974) (citations omitted); *accord Elliott Industries Limited Partnership v. BP America Production Co.*, 407 F.3d 1091, 1121 (10th

a late shift in the plaintiff's legal theory can be disallowed when it would unfairly prejudice the adverse party.[6]

No such shift took place here.  In two documents filed with the complaint, Mr. Means referred to claims involving the predecessor to RLUIPA, called the "Religious Freedom Restoration Act."[7]  The substantive provisions of RLUIPA and the statute cited by the Plaintiff are the same.[8]  And over a year before the filing of the summary judgment motion, Mr. Means had stated that he was seeking an injunction based in part on RLUIPA.[9]

_____

Cir. 2005) ("Generally, failure to set forth in the complaint a theory upon which the plaintiff could recover does not bar a plaintiff from pursuing a claim." (citation omitted)); *Pennington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1373 (10th Cir. 1979) ("It is not necessary, of course, that the particular theory or law under which recovery is sought be pleaded, nor are the dimensions of a lawsuit determined by the pleadings." (citation omitted)); *see also McKinnon v. Cairns*, 698 F. Supp. 852, 855 (W.D. Okla. 1988) ("the complaint should not be dismissed merely because plaintiffs' allegations do not support a stated legal theory, for the Court is obligated to determine whether the allegations support relief on any possible theory" (citation omitted)).

[6]     *See, e.g.*, *Green Country Food Market, Inc. v. Bottling Group, LLC*, 371 F.3d 1275, 1279 (10th Cir. 2004) (stating an exception when "a late shift in the thrust of the case" will prejudice the other party in connection with its defense (citation omitted)).

[7]     Memorandum of Law in Support of Motion for Appointment of Counsel at p. 4 (Oct. 17, 2006) ("Further analysis will prove that the prison policies as applied solely to the plaintiff are not the 'lease [sic] restrictive' in the eyes of the Religions [sic] Freedom Restoration Act." (citation omitted)); Memorandum of Law in Support of Temporary Restraining Order and Preliminary Injunction at p. 3 (Oct. 17, 2006) (discussing likelihood of success on the merits based on "RFRA"); *see Murphy v. Missouri Department of Corrections*, 372 F.3d 979, 987 (8th Cir. 2004) (referring to RFRA as "the predecessor" to RLUIPA).

[8]     *See* Michael Keegan, *The Supreme Court's "Prisoner Dilemma:" How Johnson, RLUIPA, and Cutter Redefined Constitutional Claims*, 86 Neb. L. Rev. 279, 304 (2007) ("The substantive provisions of RLUIPA are the same as those of RFRA.").

[9]     Motion for Protective Order and Injunctive Relief at p. 5 (Feb. 23, 2007) (arguing a likelihood of success on the merits based on "[t]he Religious Land Use and Institutionalized Persons Act of 2000").

In the complaint, Mr. Means had no obligation to specify a legal theory.  Thus, the absence of explicit mention of RLUIPA in the complaint does not determine whether the statutory claim is part of the action.  Instead, the issue turns on notice,[10] and the Plaintiff's multiple references to RLUIPA and its predecessor statute had informed the Defendants of the substance of the statutory claim.[11]

The Tenth Circuit Court of Appeals addressed a similar issue in *Hammons v. Saffle*, 348 F.3d 1250 (10th Cir. 2003).  Like Mr. Means, the plaintiff in *Hammons v. Saffle* was an inmate who allegedly wanted to practice his faith while in prison.[12]  And, like Mr. Means, the *Hammons* plaintiff was prohibited from the use of some religious articles while in his cell.[13]  The prisoner in *Hammons* sued *pro se*, claiming under Section 1983 that prison authorities had violated the first amendment.[14]  There was no mention of RLUIPA in the district court.[15]  The federal district court granted summary judgment to the defendants on

---

[10]   "'The purpose of "fact pleading," as provided by Fed.R.Civ.P. 8(a)(2), is to give the defendant fair notice of the claims against him without requiring the plaintiff to have every legal theory . . . developed in detail before the complaint is filed and the parties have opportunity for discovery.'"  *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1991 (10th Cir. 1991) (citation omitted).

[11]   The Plaintiff argues that he had supplied notice of the claim through the administrative process.  The Court need not address this argument because the court filings by Mr. Means and his attorney had afforded notice of the RLUIPA claim independently of the administrative process.

[12]   *See Hammons v. Saffle*, 348 F.3d at 1253-54.

[13]   *See Hammons v. Saffle*, 348 F.3d at 1253.

[14]   *See Hammons v. Saffle*, 348 F.3d at 1253.

[15]   *See Hammons v. Saffle*, 348 F.3d at 1258.

4

the first amendment claim, and the Tenth Circuit Court of Appeals upheld this ruling.[16]  But the Court of Appeals remanded the action, directing the district court to construe the "*pro se* complaint in light of RLUIPA or consider whether to appoint counsel to assist [the plaintiff] in presenting the RLUIPA claim."[17]   On remand, the Northern District of Oklahoma construed the complaint to include a RLUIPA claim even though it had never been mentioned prior to the appeal.[18]

In light of *Hammons v. Saffle*, the Western District of Oklahoma should construe the complaint to include a RLUIPA claim.  Notwithstanding the *Hammons* plaintiff's exclusive reliance on the first amendment, the Court of Appeals required the district court to interpret the complaint to include a RLUIPA claim or to obtain legal representation for the plaintiff so that he could present such a claim.  The Court of Appeals could have declined to consider a RLUIPA theory raised for the first time on appeal, but expressly declined to do so.[19]

The Tenth Circuit's reasoning would lead to the same result here.  Although Mr. Means has had the benefit of legal representation, he was proceeding *pro se* when he filed the complaint.  And, there would be little principled basis to deviate from the way in which the Court of Appeals had interpreted the *pro se* complaint in *Hammons v. Saffle*.

---

[16]     *Hammons v. Saffle*, 348 F.3d at 1253, 1257-59.

[17]     *Hammons v. Saffle*, 348 F.3d at 1258 (citation omitted).

[18]     *Hammons v. Jones*, 2006 WL 353448, Westlaw op. at 3-4 (N.D. Okla. Feb. 14, 2006) (unpublished op.); *see supra* p. 4.

[19]     *Hammons v. Saffle*, 348 F.3d at 1258; *see supra* pp. 4-5.

Rather than address the Tenth Circuit's decision in *Hammons*, the Defendants rely on a footnote in the Ninth Circuit's opinion in *Henderson v. Terhune*, 379 F.3d 709 (9th Cir. 2004). There an inmate alleged that a prison regulation had violated the first amendment right to religious expression.[20] In a footnote, the Ninth Circuit Court of Appeals declined to express an opinion on the possibility of a violation of RLUIPA.[21] From the appeals court's silence on RLUIPA, the Defendants apparently suggest that the statute is irrelevant when an inmate plaintiff relies exclusively on the first amendment. The Defendants' reliance on *Henderson v. Terhune* is misguided.

After the decision in *Henderson v. Terhune*, the Ninth Circuit Court of Appeals revisited the impact of RLUIPA in *Alvarez v. Hill*, 518 F.3d 1152 (9th Cir. 2008). There an inmate sued under Section 1983, invoking only the first amendment in the complaint and alleging that prison authorities had violated the right to religious exercise through denial of the right to participate in a sweat lodge and sacred pipe ceremony, wear a headband, consume tobacco for ceremonial purposes, and participate in group worship.[22] In response to a summary judgment motion, the inmate plaintiff stated that he was invoking RLUIPA and the first amendment as distinct sources of a right to religious expression.[23] Officials responded

---

[20]     *See Henderson v. Terhune*, 379 F.3d at 711-12.

[21]     *Henderson v. Terhune*, 379 F.3d at 715 n.1.

[22]     *See Alvarez v. Hill*, 518 F.3d at 1155.

[23]     *See Alvarez v. Hill*, 518 F.3d at 1155.

that invocation of RLUIPA was too late, relying on footnote one of *Henderson v. Terhune*.[24]

The Ninth Circuit Court of Appeals rejected the officials' argument, holding that the plaintiff

could rely on RLUIPA as a source of protection even though the statute had not been

mentioned in the complaint.[25]   The appeals court reasoned:

> [The prison officials'] argument that [the inmate plaintiff's] complaint
> failed to "state a claim" under RLUIPA because he did not cite the statute
> misapprehends the function of pleadings in federal practice.  Notice pleading
> requires the plaintiff to set forth in his complaint *claims for relief*, not causes
> of action, statutes or legal theories.
>
> . . . .
>
> A complaint need not identify the statutory or constitutional source of the
> claim raised in order to survive a motion to dismiss.[26]

The court went on to explain why footnote one of *Henderson v. Terhune* was irrelevant:

> [The prison officials'] reliance on *Henderson* is misplaced, because at no point
> did the plaintiff there even assert a RLUIPA claim.  Here, [the inmate plaintiff]
> specifically raised his RLUIPA theory in his post-complaint filings, thereby
> apprising [the prison officials] before summary judgment that he was claiming
> relief under both the First Amendment and RLUIPA.  [The prison officials]
> had notice of and the opportunity to challenge [the inmate plaintiff's] RLUIPA
> claim.  Consequently, that claim was properly before the district court at
> summary judgment and the court erred in not addressing it.[27]

---

[24]     *See Alvarez v. Hill*, 518 F.3d at 1158.

[25]     *Alvarez v. Hill*, 518 F.3d at 1157-59.

[26]     *Alvarez v. Hill*, 518 F.3d at 1157-58 (citations omitted; emphasis in original).

[27]     *Alvarez v. Hill*, 518 F.3d at 1158 (citation omitted).

In light of the Ninth Circuit's recent decision in *Alvarez v. Hill*, the Defendants' reliance on footnote one of *Henderson* is misguided.  The court that decided *Henderson* later clarified that an inmate plaintiff could rely on RLUIPA even though he had relied in the complaint solely on the first amendment.  As discussed above, the Ninth Circuit explained that it had declined to consider RLUIPA in *Henderson* only because there had been no mention of the statute in the district court.

Unlike the plaintiff in *Henderson*, Mr. Means had referred to the predecessor to RLUIPA in two briefs filed with the complaint, had invoked RLUIPA over a year before the filing of the summary judgment motion, and had relied on RLUIPA in response to the summary judgment motion.[28]  The Ninth Circuit's approach does not support the Defendants' effort to avoid RLUIPA based solely on the absence of an express reference in the complaint.

Like the Ninth Circuit, the Tenth Circuit in *Hammons v. Saffle* has required the district court to consider a RLUIPA claim even when the inmate plaintiff has omitted any reference to the statute in the complaint.[29]  In this circuit, the plaintiff ordinarily need not identify the legal theory for the claim in the complaint[30] and the Defendants had sufficient notice of the statutory claim long before the filing of the summary judgment motion.[31]  When Mr. Means

---

[28]    *See supra* p. 3.

[29]    *See supra* pp. 4-5.

[30]    *See supra* p. 2.

[31]    *See supra* p. 3.

filed the complaint, he also filed two other documents that had relied in part on the predecessor to RLUIPA.[32]   And he expressly invoked the statute over a year before Defendants Figueroa, Crouse, and Wright sought summary judgment.[33]   Under these circumstances, the Court should interpret the complaint to include a claim involving violation of RLUIPA.

### Impact of the Construction to Include a RLUIPA Claim

This construction of the complaint would affect the remaining analysis.  Because the Defendants have not interpreted the complaint to include a RLUIPA claim, they have not addressed the statutory cause of action in their summary judgment motion.  Without any such argument, the Court should decline to consider the availability of summary judgment on the RLUIPA claim.[34]   As a result, this claim would remain after the suggested ruling.

### Summary Judgment on the First Amendment Claim

On the constitutional claim, Defendants Figueroa, Crouse, and Wright are entitled to summary judgment.  The Plaintiff does not question the presence of a legitimate penological objective underlying the Defendants' actions.  Instead, the Plaintiff argues that RLUIPA and prison policy require the least restrictive alternative and that authorities could have used less

---

[32]     *See supra* p. 3.

[33]     *See supra* p. 3.

[34]     "[T]he practice of granting summary judgment sua sponte is not favored . . . ."  *Scull v. New Mexico*, 236 F.3d 588, 600-601 (10th Cir. 2000).  This practice is warranted only if: "(1) there is no dispute of material fact; and (2) the losing party has had an adequate opportunity to address the issues involved, including an adequate time to develop any facts necessary to oppose summary judgment."  *North Texas Production Credit Association v. McCurtain County National Bank*, 222 F.3d 800, 816 (10th Cir. 2000) (citation omitted).

intrusive measures to accomplish their penological objectives.[35]   Although RLUIPA and prison policy may require use of the least restrictive alternative, the first amendment does not.[36] Even under the Plaintiff's factual allegations, the limitations on Mr. Means' religious practice were rationally related to a legitimate penological objective.  The result is that the Defendants are entitled to summary judgment on the Plaintiff's constitutional theory.

I.      Standard for Summary Judgment

Summary judgment is necessary when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[37] When a summary judgment motion is filed, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party."[38]

II.     Undisputed Facts

The Plaintiff expressly declined to dispute the following facts stated by the Defendants:

1.      Plaintiff was committed to the custody of the Wyoming Department of Corrections in 1995.

---

[35]     *See supra* p. 2; *infra* pp. 16-17.

[36]     *See supra* p. 2.

[37]     Fed. R. Civ. P. 56(c).

[38]     *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted).

. . . .

3.      Plaintiff arrived at North Fork Correctional Facility on June 21, 2006.

4.      After Plaintiff's arrival at North Fork Correctional Facility, a property box containing religious items was brought by facility staff to Defendant Wright, facility Chaplain.

5.      On August 1, 2006, Chaplain Wright responded in writing to Plaintiff's request [for] all of his religious property.

6.      The August 1, 2006 response from Chaplain Wright to Plaintiff authorized Plaintiff to possess in-cell a leather pouch, eagle wing fan, a cloth medicine bag, a braid of sweetgrass, eagle feathers, and hair wrap braids.

. . . .

8.      The incarceration contract contains a religious activities and items section.

9.      Pursuant to the incarceration contract, the prison facility will provide schedules and facilities for WDOC inmates' religious practices, will allow WDOC inmates to possess or have access to religious items, and that activities and items may be restricted based upon legitimate penological concerns consistent with WDOC policies and practices.

10.     Wyoming Department of Corrections has a published policy regarding Inmate Religious Activities.

11.     WDOC Policy #5.600 allows an inmate to possess in his cell religious items, as follows:  (I) Inmate religious items shall be limited to those approved for individual possession and practice of religious traditions of the offender's declared faith, as outlined in the Handbook of Religious Beliefs and Practices.

. . . .

13.     The WDOC Handbook of Religious Beliefs lists certain authorized Native American religious property for individual use within the

general population - sweetgrass, cedar, sage, kinnikinnick, tobacco, feathers (eagle, hawk, or turkey), seashell of fireproof container, medicine bag, leather bag, and leather tie.   The sweetgrass, sage, kinnikinnick, tobacco, and cedar may be in an individual's possession but only burned in a designated area, not in the living areas and tobacco is not authorized for individual use in tobacco-free institutions.

14.   In developing the Handbook of Religious Beliefs, Wyoming Department of Corrections worked with recognized leaders within various faith communities.

15.   The Native American religious adviser consulted by WDOC for purposes of review of the Handbook was Willie LeClair, a Shoshone elder.

16.   The suggestions or recommendations of the Shoshone elder as regards what was appropriate for Native American inmate individual use and what was appropriate for group worship were taken into account and reflected in the Handbook.

17.   A monthly schedule of religious activities and observances is published for inmates at North Fork Correctional Facility, to include Catholic, Protestant, Wiccan, Muslim, Jehovah Witness, Asatru, Jewish, Seventh Day Adventist, and Native American.

18.   For Native Americans confined at North Fork, a sweat lodge observance is located within the prison facility grounds on a site dedicated by a Cheyenne tribe elder; inmates are inside the sweat lodge 2½-3 hours; a group meal follows the sweat lodge.

19.   Native American inmates confined at North Fork are allowed to smudge as part of the sweat lodge observance, burning cedar and sage and fanning the smoke over their face and bodies and around the sweat lodge site.

20.   The North Fork Correctional Facility has a pipe for use by Native Americans in group worship; the pipe was blessed by a Cheyenne Elder.

21.   The North Fork Chaplain holds for Native American religious group use a pipe, kinnikinnick, sage, sweet grass, cedar, the sweat lodge materials, and a buffalo skull.

22.   Plaintiff Means prays daily while inside his cell and outside his cell.

23.   Plaintiff Means has religious texts in his cell.

24.   While at the prison facility, Plaintiff Means wears a small medicine bag around his neck.

25.   Plaintiff possesses in his cell a medicine bag, cedar, sage, sweetgrass, bear root, and bitter root.

26.   At North Fork Correctional Facility, an inmate's cell is searched every six to ten days.

27.   At North Fork Correctional Facility, each housing unit contains 60 cells and each cell is approximately eight feet by ten feet, housing two inmates.

28.   During the day shift, one correctional officer is normally posted inside each housing unit; another officer is called into the housing unit during cell searches.

29.   A typical cell search takes fifteen (15) to thirty (30) minutes.

30.   Inmates cells are searched because inmates hide weapons, drugs, and drug paraphernalia in their cells.

31.   Though he was authorized by Chaplain Wright on August 1, 2006 to possess a leather pouch, eagle wing fan, a cloth medicine bag, a braid of sweetgrass, eagle feathers, and hair wrap braids in his cell, Plaintiff Means refused to pick up any of the items.[39]

---

[39]   Defendants' Motion for Summary Judgment and Brief in Support at pp. 3-7 (Apr. 28, 2008) (citations omitted).

III.   Confiscation of Religious Property

"Under the free exercise clause of the first amendment, an inmate must be accorded a reasonable opportunity to pursue his religion."[40]   However, this right may be limited for prisoners if the restriction is "reasonably related to legitimate penological interests."[41]   This principle applies here, as the limitations imposed on Mr. Means are rationally related to valid objectives.   The rationality of the limitations entitles the Defendants to summary judgment on the first amendment claim.

A.   Existence of a Sincerely Held Religious Belief

The Defendants argue that the Plaintiff's stated religious beliefs are not "sincere."[42] On this issue, summary judgment is rarely appropriate because the inquiry ordinarily turns on credibility.[43]   Indeed, the parties agree that the sincerity of a plaintiff's beliefs involves

---

[40]     *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991).

[41]     *Makin v. Colorado Department of Corrections*, 183 F.3d 1205, 1209 (10th Cir. 1999) (citation omitted).

[42]     The first amendment applies only if the restrictions affect a "sincerely held" religious belief. *See LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991) ("plaintiff is entitled to invoke First Amendment protection if his religious beliefs are sincerely held" (citations omitted)).

[43]     *See Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352-53 (10th Cir. 1997) ("The inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment, and therefore the issue of sincerity can rarely be determined on summary judgment." (citations omitted)), *vacated in part on other grounds*, 159 F.3d 1227, 1228 n.2 (10th Cir. 1998).

a factual inquiry,[44] and the presence of this factual dispute is fatal to the Defendants'

argument for summary judgment on this issue.

The Defendants focus on the Plaintiff's testimony that:

- he adheres to the "Sun Dance" religion, which is performed once per year on a reservation in Wyoming,

- he has participated in only one Sun Dance in 1994,

- the clothing or regalia are worn during a pow wow, but not during the Sun Dance or sweat lodge, and

- Mr. Means has never participated in a pow wow.

The Defendants' argument involves a factual dispute.  Mr. Means testified that all of

his religious items are essential to his Sun Dance religion[45] and explained their significance.[46]

---

[44]    Defendants' Motion for Summary Judgment and Brief in Support at p. 10 (Apr. 28, 2008) ("The determination of whether an individual is sincere in his or her beliefs is a factual one.") (citation omitted)); Response to Defendants CCA, Ferguson, Figueroa, Crouse, and Wright's motion for Summary Judgment and Brief in Support at p. 9 (June 4, 2008) ("Whether religious beliefs are sincerely held is a question of fact." (citations omitted)); *see also LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991) (stating in connection with a claim involving violation of the right to religious freedom, "the trier of fact must determine if the prisoner is sincere in his or her religious beliefs" (citations omitted)).

[45]    Transcript of Preliminary Injunction at pp. 12-13, 31-35 (Jan. 22, 2008).

[46]    Transcript of Preliminary Injunction at p. 16 (flowered scarf and medicine bag); *id.* at pp. 16-17 (strips of buffalo); *id.* at pp. 17-18 (dance bustle); *id.* at pp. 18-19 (sash and dance outfit bustle belt); *id.* at pp. 19-20 (dance outfit cuffs and moccasins); *id.* at p. 20 (hair braid wraps); *id.* at pp. 20-21 (ceremonial arm band and unfinished bustle); *id.* at pp. 21-22 (dance stick and buffalo tail); *id.* at pp. 22-23 (sacred hoop and dance bells); *id.* at pp. 23-24 (ceremonial dance apron and vest); *id.* at p. 24 (choker); *id.* at pp. 24-25 (ceremonial dance outfit regalia bustle breast plate); *id.* at pp. 25-26 (ceremonial social dance regalia porcupine roach and sweetgrass); *id.* at pp. 26-28 (cedar pouch); *id.* at pp. 28-29 (cloth bag and turtle shell rattle); *id.* at pp. 29-30 (ceremonial whistle and eagle feather fan); *id.* at pp. 30-31 (Sun Dance pipe).

From this testimony, the fact-finder could reasonably infer that Mr. Means sincerely believes in the Sun Dance faith and that he needs the items in dispute to practice his religion. The Defendants' characterization of the issue as a factual one is correct and prevents summary judgment based on the sincerity of Mr. Means' religious beliefs.

B.      Balancing Test

In light of this factual dispute, the Court must determine the validity of the Defendants' restrictions on Mr. Means' possession of his religious articles. The constitutionality of these restrictions is based on the balancing of four factors:

- the existence of a rational connection between the prison restriction and a legitimate penological interest,

- the presence of alternatives for inmates to exercise their right to worship,

- the effect that elimination of the restriction would have on guards, other inmates, and prison resources, and

- the existence of alternatives for prison officials without restricting inmates' rights to religious expression.[47]

According to the Plaintiff, these factors "do not necessarily provide the correct standard" "because this is a Freedom of Religion case."[48] The Plaintiff does not provide authority for this proposition, but elsewhere argues that the "least restrictive means" must be

---

[47]     *See Turner v. Safley*, 482 U.S. 78, 89-90 (1987).

[48]     Response to Defendants CCA, Ferguson, Figueroa, Crouse and Wright's Motion for Summary Judgment and Brief in Support at p. 10 (June 4, 2008).

used in light of RLUIPA and the prison's internal policies.[49]   The Plaintiff's argument appears to mix principles underlying the first amendment, RLUIPA, and prison policies.   All are distinct enactments.[50]

The four factors apply when a prisoner claims violation of the first amendment's Free Exercise Clause.[51]   Although RLUIPA and prison policy may require officials to use the least restrictive means, the first amendment does not.[52]

### Presence of a Rational Connection Between the Restriction and a Legitimate Penological Interest

The first factor is the existence of a rational connection between the prison regulation and a legitimate penological interest.[53]   This factor would support the Defendants even if the

---

[49]    *See supra* p. 2.

[50]    *See Kay v. Bemis*, 500 F.3d 1214, 1221 (10th Cir. 2007) ("the standards under RLUIPA are different than under the free exercise clause of the First Amendment"); *Al-Amin v. Smith*, 511 F.3d 1317, 1336 n.37 (11th Cir. 2008) (noting that regulations by the state prison "do not constitute constitutional law").

[51]    *See Searles v. Dechant*, 393 F.3d 1126, 1131 (10th Cir. 2004) (stating that the district court had properly applied the four factors in an inmate's Section 1983 suit involving violation of his right to free exercise of his religion); *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) (applying the four factors when prisoners sued under Section 1983 for violation of their first amendment right to freely exercise their religion).

[52]    *See supra* p. 2 (discussing RLUIPA and the first amendment); Wyoming Department of Corrections, Policy and Procedure # 5.600 at 7 (stating that chaplains or their designees "shall approve or deny the requested religious practice, activity or article, considering the least restrictive alternative consistent with institutional security, safety and good order").

[53]    *See supra* p. 16.

Court were to construe all of the evidence and the reasonable inferences in favor of Mr. Means.

In the evaluation of this factor, the Court considers whether "the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational."[54]

The Defendants have based their restrictions on objectives involving maintenance of order and security within the prison.  These interests are considered "legitimate" as a matter of law.[55]   The greater question is whether a rational connection exists between these objectives and the restrictions on Mr. Means' possession of religious articles.  The Court should answer in the affirmative because many of the items pose security risks and the sheer volume would require numerous man-hours to search.

The evidence is undisputed regarding safety risks associated with many of the articles. For example, Assistant Warden Crouse testified that:

- the sticks and tape could be used to hide contraband or to make a shank, knife, or spear,[56]

- the buffalo hide with hair could be used to create a mannequin, to breach razor wire, or to use in a fight,[57]

---

[54]   *Turner v. Safley*, 482 U.S. 78, 89-90 (1987).

[55]   *See Hammons v. Saffle*, 348 F.3d 1250, 1254-55 (10th Cir. 2003) (stating that prison officials had legitimate penological interests in the maintenance of "prison order and safety").

[56]   Transcript of Preliminary Injunction at pp. 163-64.

[57]   Transcript of Preliminary Injunction at p. 164.

- the eagle quill could be used to hide drugs, a shank, or tattoo needles,[58]

- the pipe and shell could be used as weapons,[59]

- the abalone bowl could be used to smoke marijuana,[60] and

- the buffalo bone piercing sticks could be used to create a shank or could result in the spread of disease.[61]

Mr. Means contends that the Defendants did not present evidence of safety risks associated with some of the articles, such as the religious tapes, CDs, sage, sweetgrass, cedar bags, knickknick, bags containing sassafras bark, and medicine wheel.  The contention does not withstand scrutiny for purposes of summary judgment because Mr. Means already can keep some of the articles and the sheer number of items would prolong the cell searches.[62]

The Plaintiff's examples illustrate the shortcomings in his argument.  For example, the parties agree that Mr. Means can keep sage, sweetgrass, and cedar in his cell.[63] "Kinnikinnick" is Indian tobacco, and the authorities already allow Plaintiff to keep this item in his cell.[64]  There is no evidence regarding the Plaintiff's ownership of "sassafras bark." The evidence is also undisputed that Mr. Means could have had his religious tapes and CDs,

---

[58]    Transcript of Preliminary Injunction at p. 166.

[59]    Transcript of Preliminary Injunction at pp. 167-68.

[60]    Transcript of Preliminary Injunction at pp. 167-68.

[61]    Transcript of Preliminary Injunction at pp. 166-67.

[62]    *See infra* p. 20.

[63]    *See supra* pp. 10, 13 ¶¶ 21, 25.

[64]    *See* Transcript of Preliminary Injunction at p. 125 (Jan.  22, 2008); *supra* pp. 10, 13 ¶ 21.

but he took an "all . . . or none" stance on his religious property.[65]  Finally, the Plaintiff could have access to his medicine wheel during the sweatlodge ceremonies if he had chosen to participate.[66]

Apart from the shortcomings in the examples, the Plaintiff's argument is self-defeating because it does not avoid the presence of a rational connection between the limitations and the Defendants' stated penological interests.  As the Plaintiff points out, the increase in man-hours would result from the volume of materials rather than their religious nature.[67]  Thus, as the Plaintiff argues, the need for additional man-hours would exist whenever a prisoner accumulates a substantial number of items, regardless of their religious or secular nature.  The Plaintiff's logic is unassailable, but does not affect the existence of a rational connection between the restrictions and a legitimate penological interest.

As the Plaintiff's argument suggests, the prison's restrictions could be viewed as under-inclusive because the same problems could arise when a prisoner accumulates numerous secular items in his cell.  But the under-inclusive nature of the prison's restrictions would not render them irrational.[68]  Ultimately the question remains whether the Defendants

---

[65]    *See* Transcript of Preliminary Injunction at pp. 112-13 (Jan. 22, 2008); *supra* pp. 10, 13 ¶ 31.

[66]    *See* Transcript of Preliminary Injunction at p. 103 (Jan. 22, 2008).

[67]    *See* Transcript of Preliminary Injunction at pp. 154-60 (Jan. 22, 2008).

[68]    *See Curtis v. Thompson*, 840 F.2d 1291, 1302-1303 (7th Cir. 1988) ("Mere underinclusiveness does not . . . amount to constitutional infirmity.").

have presented unrefuted evidence of a rational connection between the limitations and the stated interests in order and safety. The Court should answer in the affirmative.

The Tenth Circuit Court of Appeals addressed a similar issue in *Hammons v. Saffle*, 348 F.3d 1250 (10th Cir. 2003). There a Muslim prisoner claimed that authorities had violated the first amendment through a ban on the possession in a cell of Muslim prayer oils.[69] Authorities claimed that they had legitimate penological interests in preventing the spread of illegal drugs, maintaining prison order and safety, deterring crime, and rehabilitating inmates.[70] The inmate plaintiff argued that the ban was not logically connected to the stated penological interests because prisoners could still acquire imitation colognes and perfumes, which had a stronger scent than Muslim prayer oils.[71] The Tenth Circuit of Appeals rejected this argument.[72] The court began with the observation that authorities "can, in some circumstances, implement policies that are logical but yet experiment with solutions and address problems one step at a time."[73] From this observation, the appeals court concluded that the ban on Muslim prayer oils could logically relate to the stated penological interests even if further steps could have been taken in connection with imitation colognes and perfumes.[74] The court explained:

---

[69]   *See Hammons v. Saffle*, 348 F.3d at 1255.

[70]   *See Hammons v. Saffle*, 348 F.3d at 1255.

[71]   *See Hammons v. Saffle*, 348 F.3d at 1255.

[72]   *Hammons v. Saffle*, 348 F.3d at 1255.

[73]   *Hammons v. Saffle*, 348 F.3d at 1255 (citation omitted).

[74]   *Hammons v. Saffle*, 348 F.3d at 1255.

[The prison officials'] choice to take the less direct route of banning in-cell possession of prayer oils three years prior to banning in-cell possession of imitation colognes and perfumes does not preclude a holding that the 1999 Policy was nevertheless rationally related to their legitimate penological interests.[75]

Like the policy at issue in *Hammons v. Saffle*, the restriction on Mr. Means' religious articles would remain logically related to penological interests even if the policy could have gone further. The Plaintiff's argument suggests that inmates can continue to create risks by possessing large quantities of secular items in their cells. But like the authorities in *Hammons v. Saffle*, Defendants Figueroa, Crouse, and Wright can experiment with solutions one step at a time.[76] Thus, even if the Defendants' restrictions were considered under-inclusive, they would remain rationally connected to the stated penological interests.

Even if the Court were to view the evidence and all reasonable inferences favorably to Mr. Means, the first factor would support the constitutionality of the Defendants' restrictions.

---

[75]    *Hammons v. Saffle*, 348 F.3d at 1255 (citation omitted).

[76]    *See Federal Communications Commission v. Beach Communications, Inc.*, 508 U.S. 307, 316 (1993) ("the legislature must be allowed leeway to approach a perceived problem incrementally" (citation omitted)).

Availability of Alternative Means for Mr. Means to Exercise His Religious Rights

The second factor is the availability of alternative means for Mr. Means to exercise his right to worship.[77]  The undisputed evidence would require the Court to weigh this factor in favor of the Defendants.

"[A]n alternative means exists so long as *some* means, albeit not plaintiff's preferred means, of religious exercise is available."[78]  Even under the Plaintiff's version of the facts, the Defendants have not cut off all means of worship for Mr. Means.  For example, the evidence is undisputed that the prison allows Mr. Means to:

- engage in group worship at a sweat lodge, with fire and smoke-producing substances,[79]

- wear a medicine pouch around his neck,[80]

- keep religious literature in his cell,[81]

- keep a medicine bag, cedar, sage, sweetgrass, bear root, and bitter root in his cell,[82]

---

[77]    *See supra* p. 16.

[78]    *Hammons v. Saffle*, 348 F.3d 1250, 1256 (10th Cir. 2003) (citation omitted; emphasis in original).

[79]    *See* Transcript of Preliminary Injunction at pp. 124, 152 (Jan. 22, 2008); *supra* pp. 10, 12 ¶ 19.

[80]    *See* Transcript of Preliminary Injunction at pp. 152-53 (Jan. 22, 2008); *supra* pp. 10, 13 ¶ 24.

[81]    *See* Transcript of Preliminary Injunction at p. 153 (Jan. 22, 2008); *supra* pp. 10, 13 ¶ 23.

[82]    *See* Transcript of Preliminary Injunction at pp. 67, 131 (Jan. 22, 2008); *supra* pp. 10, 13 ¶ 25.

- use a pipe, kinnikinnick, buffalo skull, sage, cedar, and sweetgrass in connection with group worship through the sweat lodge.[83]

Even under the Plaintiff's view of the facts, the existence of these alternatives would support the reasonableness of the Defendants' restrictions.[84]

The Plaintiff argues that he cannot participate in a "smudge" without return of his pipe and that the Defendants' stated interests would not justify withholding of every item.  These arguments are invalid as a matter of law because at least some spiritual alternatives would indisputably remain for Mr. Means.

For example, even if the Plaintiff were unable to participate in a "smudge," he concedes that the existing "sweat lodge work[s] with [his] religious beliefs,"[85] that he prays daily while in the prison,[86] that he is able to wear a medicine bag,[87] and that he is allowed to keep cedar, sage, sweetgrass, bear root, and bitter root in his cell.[88]

The Plaintiff also argues that the Defendants' penological interests do not support withholding of every item in dispute.  But Mr. Means demanded return of all of his religious

---

[83]     *See* Transcript of Preliminary Injunction at p. 131 (Jan. 22, 2008); *supra* pp. 10, 13 ¶ 21.

[84]     *See Iron Eyes v. Henry*, 907 F.2d 810, 814-15 (8th Cir. 1990) (concluding that a prison's restrictions on hair length complied with the first amendment in part because the inmate plaintiff was still able to meet with other Native American inmates for the Sundance and performance of pipe ceremonies).

[85]     Transcript of Preliminary Injunction at pp. 36-37 (Jan. 22, 2008).

[86]     Transcript of Preliminary Injunction at p. 44 (Jan. 22, 2008); *see supra* pp. 10, 13 ¶ 22.

[87]     Transcript of Preliminary Injunction at pp. 46 (Jan. 22, 2008); *see supra* pp. 10, 13 ¶ 24.

[88]     Transcript of Preliminary Injunction at pp. 43-44 (Jan. 22, 2008); *see supra* pp. 10, 13 ¶ 25.

articles.[89]  "If a request is made by an inmate, prison officials are obligated to investigate the reasonableness of that request but are not required to investigate lesser requests which could have been made."[90]

### Impact that Accommodation Would Have on Guards, Other Inmates, and Prison Resources

The third factor is the impact that accommodation of the asserted constitutional right would have on guards, other inmates, and prison resources.[91]  Even under the Plaintiff's version of the facts, this consideration would support the reasonableness of the Defendants' restriction.

The Defendants have presented evidence that:

- the requested items create dangers because they could be used as weapons or to hide contraband,[92] and

- the number and nature of the items would substantially increase the number of man-hours needed for searches of the Plaintiff's cell.[93]

This evidence is undisputed, and it supports the constitutionality of the Defendants' limitations.

---

[89]    CCA Inmate/Resident Grievance Form (received Aug. 15, 2006) (seeking return of all of his religious items, stating that "all are necessary" to the practice of his religion); *see supra* pp. 10, 11 ¶ 5, 13 ¶ 31; *see also* Transcript of Preliminary Injunction at p. 83 (Jan. 22, 2008) (Mr. Means' testimony in the present action regarding the need for all of his religious articles to practice his faith).

[90]    *Thomas v. Gunter*, 103 F.3d 700, 703 n.3 (8th Cir. 1997).

[91]    *See supra* p. 16.

[92]    *See supra* pp. 18-19.

[93]    *See* Transcript of Preliminary Injunction at pp. 154-61 (Jan. 22, 2008).

Existence of Ready Alternatives for the Defendants

The final factor is whether alternatives exist for the Defendants to satisfy their penological interests.[94] This factor also supports the constitutionality of the restrictions under any reasonable view of the evidence.

The Supreme Court explained this factor:   "[T]he existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns."[95]

The Plaintiff argues that officials have two alternative ways to accomplish their penological objectives:  to give him his religious items or to allow him access.[96]  According to Mr. Means, these alternatives would not engender jealousy among other inmates because "there is only one known Sun Dance Native American at the facility."[97]  But the Plaintiff does not explain how acquiescence by the Defendants would satisfy the stated interests in avoiding lengthy searches, preventing access to items which could be used as weapons, and avoiding concealment of contraband.

---

[94]        *See supra* p. 16.

[95]        *Turner v. Safley*, 482 U.S. 78, 90 (1987).

[96]        Response to Defendants CCA, Ferguson, Figueroa, Crouse and Wright's Motion for Summary Judgment and Brief in Support at p. 14 (June 4, 2008).

[97]        Response to Defendants CCA, Ferguson, Figueroa, Crouse and Wright's Motion for Summary Judgment and Brief in Support at p. 14 (June 4, 2008).  The Plaintiff supplies no evidence for this assertion, and his statement in the brief is not considered part of the summary judgment record.  *See* LCvR 7.1(j) ("Factual statements . . . appearing only in briefs shall not be deemed to be a part of the record in the case, unless specifically permitted by the Court.").

Summary

The uncontested evidence would lead any rational fact-finder to favor the Defendants when balancing the four applicable factors. This balancing would require summary judgment for Defendants Figueroa, Crouse, and Wright on the first amendment claim. But the Defendants do not address RLUIPA, and the suggested ruling would not affect the Plaintiff's statutory claim.

Notice of the Right to Object

The Plaintiff can object to this report and recommendation. To do so, Mr. Means must file an objection with the Clerk of this Court. The deadline for objection is August 6, 2008.[98] The failure to timely object would foreclose appellate review of the suggested ruling.[99]

Status of the Referral

The referral is terminated. If the Court adopts the recommended disposition, the undersigned would suggest recommitment for further proceedings in connection with the RLUIPA claim.

---

[98]    *See* W.D. Okla. LCvR 72.1.

[99]    *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

Entered this 16th day of July, 2008.


Robert E. Bacharach
United States Magistrate Judge